**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BRETT T. HYMAN, | : | CIVIL CASE NO. |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | |
| CITY OF BRIDGEPORT | : | |
| Defendant. | : | JANUARY 8, 2019 |

<u>COMPLAINT</u>

**I. <u>PRELIMINARY STATEMENT</u>**

1.    This action seeks declaratory, injunctive and equitable relief; compensatory damages; and costs and attorney fees for the deprivation of the rights guaranteed to the plaintiff pursuant to the provisions of the Rehabilitation Act of 1973, as amended, Title 29 U.S.C. §§ 791 and 794, in which the plaintiff claims that the defendant discriminated against him on account of his disability when the defendant refused to allow him to return to work as a Lieutenant on the Bridgeport Police Department solely due to his disability.

1

## II. <u>JURISDICTION</u>

2.      This action arises under the provisions of the Rehabilitation Act, Title 29 U.S.C. §§ 791 and 794.

3.      Jurisdiction is invoked pursuant to Title 28 U.S.C. §1331 and Title 28 U.S.C. §1343(4).

4.      Declaratory, injunctive and equitable relief is sought pursuant to Title 28 U.S.C. §2201 and Title 28 U.S.C. §2202.

5.      Attorney fees and costs are sought pursuant to Title 29 USC § 794a.

## III. <u>VENUE</u>

6.      This action properly lies in the United States District Court for the District of Connecticut pursuant to Title 28 U.S.C. §1391(b).

## IV. <u>PARTIES</u>

7.      The plaintiff, Brett T. Hyman, is a citizen and resident of the United States residing in Oxford, Connecticut.

8.      The defendant, City of Bridgeport ("Bridgeport"), is a municipal corporation organized and existing under the laws of the State of Connecticut of which it is a political subdivision.

9.  Title 29 U.S.C. § 794 provides, in relevant part, "[n]o otherwise qualified individual with a disability in the United States, as defined in section 7(20) [29 USCS § 705(20)], shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…"

10. The defendant, including its police department, is the recipient of Federal financial assistance.

11. Title 29 U.S.C. § 794 further provides, in relevant part, "[f]or the purposes of this section, the term "program or activity" means all of the operations of--(1) (A) a department, agency, special purpose district, or other instrumentality of a State or of a local government."

## V. FACTS

12. The plaintiff has been employed by the defendant since July 8, 1996, as a police officer.

13. Since 1996, the plaintiff has advanced in the ranks of the Bridgeport Police Department, being first promoted to the position of Sergeant, and then to Lieutenant, his current rank.

14. The defendant is an employer.

15. The defendant is the recipient of federal funds.

16. The plaintiff is an individual with a disability as that term is defined under the provisions of the Rehabilitation Act in that he suffers from physical impairments which substantially limit one or more of his major life activities, including eating, and one or more of his bodily functions, including the functioning of his digestive and neurological systems.

17. The plaintiff is an individual with a disability under the Rehabilitation Act in that he has a record of impairments which substantially limit one or more of his major life activities.

18. The plaintiff is an individual with a disability under the Rehabilitation Act in that the defendant regards him as having impairments which substantially limit one or more of his major life activities.

19. The plaintiff is fully qualified to perform the duties, responsibilities, and functions of the position of police lieutenant, without the need for an accommodation.

20. The defendant has refused to allow the plaintiff to return to his employment as a police lieutenant solely on account of his physical disability, chronic Lyme disease and the continuing effects resulting from his treatment for chronic Lyme disease.

21.    The authorized officials of the defendant, in particular it's Chief of Police, who refused the plaintiff's request to return to work as a police lieutenant, are fully aware of the plaintiff's disability.

22.    In 2003, the plaintiff contracted a severe case of Lyme disease.

23.    Untreated chronic Lyme disease results in debilitating fatigue, muscle and joint pain, headaches, mental fog causing difficulty with memory or finding words, irritability, and sleeplessness.

24.    In 2006-2007, because of his continuing affliction with Lyme disease, the plaintiff was unable to work for approximately 11 months during which time a peripherally inserted central catheter (PICC) was inserted in the plaintiff for the administration of potent medications to combat the Lyme disease.

25.    Two years later, the plaintiff was again out of work for approximately five months as a result of the recurrence of the Lyme disease requiring once more the insertion of a PICC for the administration of the Lyme disease medications.

26.    Since being afflicted with Lyme disease, the plaintiff has been out of work numerous times for weeks at a time with small reoccurring bouts of Lyme disease and still takes medication to treat the disease.

27.   As an integral component of the plaintiff's medical treatment for Lyme disease, the plaintiff's physician, Dr. Gary Blick, prescribed the plaintiff the FDA approved medication, Marinol, commencing in 2003, to counteract the side effects of the plaintiff's Lyme disease treatment, loss of appetite, bordering on anorexia, and Irritable Bowel Syndrome.

28.   Dronabinol is the active ingredient Marinol, and has been assigned to schedule I under the Controlled Substance Act of 1970 ("CSA").

29.   The Drug Enforcement Act ("DEA") implements the CSA and may prosecute violators of these laws at both the domestic and international level. Within the CSA there are five schedules at the federal level (I-V) that are used to classify drugs based upon their: (1) abuse potential; (2) accepted medical applications in the U.S.; and (3) safety and potential for addiction.

30.   Dronabinol remains in schedule I, with one notable exception; the Food and Drug Administration ("FDA"), after extensive testing and research, approved the drug Marinol-described as " [d]ronabinol (synthetic) in sesame oil and encapsulated in a soft gelatin capsule."

31.   Marinol is listed in Schedule III of the CSA, and is an approved FDA medication for the conditions from which the plaintiff suffers.

32.    Insurance coverage to pay for the cost of the plaintiff's use of the Marinol has been provided by the defendant, without issue, since 2003.

33.    The defendant is self-insured, and has been paying directly for the plaintiff's use of Marinol since it was first prescribed to him as a component of his medical treatment for Lyme disease.

34.    When the City of Bridgeport implemented random drug screening for members of the police department, the plaintiff once again disclosed his use of Marinol to the defendant because of the possibility of a mistaken positive result indicating use of marijuana.

35.    The plaintiff takes the Marinol once a day at approximately 11:00 p.m. and it does not interfere with his ability to perform the essential functions of his job as a police lieutenant on the Bridgeport Police Department.

36.    The defendant's medical review officer, Dr. Ronald T. Suski, M.D., has confirmed to the defendant that Marinol contains a single synthetic molecule reflective of properties found in marijuana; that the single molecule will not impede the plaintiff from performing his duties assigned to him as a police officer; that under this medication, side effects commonly associated with marijuana use such as euphoria or paranoia are not found to take place; and that the FDA approved drug allows the

plaintiff to overcome medical issues attributed to his previous bouts of Lyme disease.

37.    Since the defendant implemented its drug screening of police officers, the plaintiff has tested positive for marijuana use, even though he had not used marijuana.

38.    Over the last five years, the plaintiff has tested positive to tetrahydrocannabinol (THC) Metabolite four times.

39.    Since Marinol is a pure isomer of THC, meaning there are no other potentially harmful chemicals like those found in marijuana.

40.    Because of his treatment with Marinol, the plaintiff's blood screens revealed the presence of THC resulting in  false positives for the use of marijuana.

41.    On these occasions when there were false positive reports that the plaintiff had used marijuana, the defendant's medical review officer would "negate" the positive results.

42.    The defendant placed the plaintiff on administrative leave with pay on August 27, 2018, when the testing laboratory employed by the defendant to conduct drug screens on its police officers erroneously reported to the defendant that the plaintiff had tested positive for marijuana.

43.　The testing laboratory issued a corrected report at the request of the defendant's medical review officer stating that the plaintiff had tested negative for marijuana. *Exhibit 5.*

44.　The defendant, without proof of any kind, and despite incontestable evidence to the contrary including the statements of its medical review officer, and the conclusive report of Captain Douglas M. Stolze, *Exhibit 1,* claims that the plaintiff improperly used medical marijuana in violation of the policies of the Bridgeport Police Department. *Exhibit 2, and Exhibit 3.*

45.　As stated by the plaintiff's treating physician, "DRONABINOL IS NOT MARIJUANA." *(Emphasis in the original). Exhibit 4.*

46.　Despite repeated requests that he be allowed to return to work, the defendant has refused, without legitimate reasons, the plaintiff's repeated requests.

47.　The defendant continues to bar the plaintiff from returning to work instead threatening him with disciplinary action solely because of the plaintiff's disability.

48.　The plaintiff remains out of work with pay but being deprived by the defendant of substantial overtime opportunities, and shift differential pay that he would have received working the evening shift hours.

49.   By the actions of the defendant in unjustly placing the plaintiff on administrative leave with pay, the defendant has harmed the plaintiff's honorable reputation as a highly respectable police officer, and senior shift commander.

50.   Because of the defendant's actions, the plaintiff has suffered economic losses.

51.   Because of the defendant's actions, the plaintiff has suffered emotional distress.

VI.   **FIRST CAUSE OF ACTION (Violation of the Rehabilitation Act – Suspension from Employment with Pay)**

52-102. The plaintiff incorporates as if re-alleged paragraphs 1 through 51.

103.   The plaintiff is a qualified individual with a disability within the meaning of the Rehabilitation Act, Title 29 U.S.C. § 794(a), in that the plaintiff is an individual with a disability who is capable of performing the essential functions of the position of police lieutenant in the employ of the defendant.

104.   The defendant has barred the plaintiff from returning to his employment as a police lieutenant because of the FDA approved medication prescribed to treat the plaintiff's physical disability.

105.   Preventing the plaintiff from returning to work because of medication used by the plaintiff to treat his physical disability is a discriminatory act prohibited by the Rehabilitation Act, Title 29 U.S.C. § 794.

106.   As a result of his physical impairment, the plaintiff is restricted in the major life activity of eating, and in the major bodily functions of his digestive system and neurological system.

107.   The defendant was fully aware that the plaintiff suffered from a physical disability; he was on medical leave for an extended period starting in 2006 for eleven months, and another five months two years later as a result of the effects of the Lyme disease which he had contracted in 2003; his prescriptive medications were approved and paid by the defendant; and its medical review officer had reviewed and corrected various false positives for marijuana use because of the Marinol he was taking to treat his condition.

108.   During his employment with the defendant, the plaintiff has been an otherwise qualified individual with a disability within the meaning of the Rehabilitation Act.

109.   The plaintiff suffers from physical impairment to his neurological and digestive systems.

110.   Although the plaintiff's condition impacts on his major bodily functions, including his digestive and neurological systems, the plaintiff is able to perform the essential functions of his job as a police lieutenant without the need for an accommodation.

111.    The defendant discriminated against the plaintiff with malice and with a reckless indifference to the federally protected rights guaranteed to the plaintiff under the provisions of the Rehabilitation Act.

112.    The defendant's refusal to allow the plaintiff to return to his employment as a police lieutenant on account of his physical disability has caused, continues to cause and will cause the plaintiff to suffer substantial damages for future pecuniary losses, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

113.    The defendant's refusal to allow the plaintiff to return to his employment as a police lieutenant on account of his physical disability has caused, continues to cause and will cause plaintiff irreparable harm through his loss of such gainful employment.

114.    The defendant refused to allow the plaintiff to return to his employment as a police lieutenant because it regarded the plaintiff as being disabled.

115.    The defendant refused to allow the plaintiff to return to his employment as a police lieutenant because the plaintiff had a record of a disability.

116.   There does not exist a legitimate, non-discriminatory reason that justified the defendant's refusal to allow the plaintiff to return to his employment as a police lieutenant.

117.   By refusing to allow the plaintiff to return to his employment as a police lieutenant because of his disability, his record of disability and/or because it regarded the plaintiff as being disabled constitute violations of the Rehabilitation Act, causing the plaintiff to suffer emotional distress.

118.   The defendant was fully aware of the plaintiff's record of disability.

119.   The defendant regarded the plaintiff as suffering from disabling physical impairments.

120.   The defendant violated the provisions of the Rehabilitation Act by refusing to allow the plaintiff to his employment as a police lieutenant because of his physical impairments.

121.   The defendant has discriminated against the plaintiff on the basis of his physical impairments.

122.   The defendant's actions in refusing to allow the plaintiff to return to work, violate the provisions of the Rehabilitation Act.

## VII. <u>PRAYER FOR RELIEF</u>

WHEREFORE, THE PLAINTIFF PRAYS THAT THIS COURT:

a. declare the conduct engaged by the defendant to be a violation of the plaintiff's rights guaranteed to him by the Rehabilitation Act;

b. enjoin the defendant from engaging in such conduct;

c. award the plaintiff equitable relief in the form of back salary and fringe benefits from August 27, 2018, plus interest as allowed by law until paid in full, together with front salary and benefits accrual;

d. reinstate the plaintiff to the position of police lieutenant;

e. award the plaintiff compensatory damages;

f. award the plaintiff costs and attorney fees; and

g. grant such other and further relief as the Court may deem just and proper.

## VIII.   <u>JURY DEMAND</u>

**THE PLAINTIFF REQUESTS A TRIAL BY JURY**.


THE PLAINTIFF – BRETT T. HYMAN


BY<u>  /s/ Thomas W. Bucci</u>
Thomas W. Bucci
Fed. Bar #ct07805
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT  06604
Tel: (203) 366-3939
Fax: (203) 337-4588
Email: thomaswbucci@outlook.com

**From:**        Thomas W. Bucci <thomaswbucci@outlook.com>
**Sent:**        Tuesday, December 18, 2018 3:22 PM
**To:**          Quintiliano, Jeanine
**Subject:**     Hyman

To:      Chief Armando Perez

From:    Captain Douglas M. Stolze

Re:      Lieutenant Brett Hyman Administrative Status

Date:    November 20, 2018

Sir,

As you requested I investigated this matter to better help clarify the situation presented to you in this matter reflective of a positive drug screen test performed on Lieutenant Brett Hyman on August 21, 2018.

Please see attached for your review documentation to assist in your review most importantly documentation from Lt. Brett Hyman's primary physician. About the following is related:

* Lieutenant Brett Hyman has been taking an FDA approved drug for several years for a medical condition he has experienced in the past.

* The drug being FDA approved is not reflective of medical marijuana use classified as a schedule 1 drug.

* Lt. Brett Hyman disclosed his use of this prescription to the city once the City of Bridgeport began to administer drug screening given the chance he would probably
  return a positive result when tested.

* That Lt. Brett Hyman has subsequently had previous positive results that have been negated by his primary care and the administering physical of the program
  Dr. Suski based on this FDA approved medicine.

* I spoke with Dr. Suski as you suggested to clarify that the medication contains a single synthetic molecule reflective of properties found in marijuana.

* That this single molecule will not impede Lieutenant Brett Hyman from performing his duties assigned to him as a police officer.

* That under this medication side effects commonly associated with marijuana use such as euphoria or paranoia are not found to take place.

* The FDA approved drug allows Lieutenant Brett Hyman to overcome medical issues attributed to his bouts with Lyme Disease.

Given these facts as well as the urging from Dr. Suski that the result taken should be considered negative reflective of this prescription, I find no cause for administrative suspension
or grounds for discipline reflective of our policy regarding positive drug screening results for Lieutenant Brett Hyman.

1

PLAINTIFF'S EXHIBIT

I therefore recommend full reinstatement as soon as possible.

Signed Captain Douglas M. Stolze.

Thomas W. Bucci, Esq.
Partner
Willinger, Willinger & Bucci, P.C.
855 Main Street
Bridgeport, CT 06604
Phone: 203-366-3939
Facsimile: 203-337-4588
Email: TBucci@wwblaw.com



**Thomas W. Bucci**
Willinger, Willinger & Bucci, P.C.
Partner

(203) 366-3939 Work
tbucci@wwblaw.com
855 Main Street, Bridgeport, CT 066...
www.wwblaw.com



Privileged and confidential. If received in error, please notify me by e-mail and delete the message. IRS CIRCULAR 230 NOTICE. Any tax advice contained in this email is not intended or written to be used, and cannot be used, for the purpose of avoiding tax penalties or promoting, marketing or recommending any partnership or other entity, investment plan or arrangement to one or more taxpayers.

CITY OF BRIDGEPORT
# DEPARTMENT OF POLICE
300 CONGRESS STREET
BRIDGEPORT, CONNECTICUT 06604

**ARMANDO J. PEREZ**
Chief of Police

To:     Chief Armando J. Perez

From:   Lieutenant Richard J. Azzarito

Re.:    Lt. Brett Hyman's Failed Drug Test

Date:   August 28, 2018

Sir,

The Bridgeport Police Department conducts random drug testing of all sworn employees in accordance with Policy and Procedure section 2.7.4. Part of this initiative is due to the safety sensitive nature of police work; the City has a compelling interest in eliminating the use of controlled substances from its workplace. It is the policy of the City of Bridgeport that the illegal use of a controlled substance or misuse of alcohol or prescribed drugs is strictly prohibited.

Gregory and Howe Inc. of 2 Corporate Drive, Shelton, Ct. is the drug testing provider for the City of Bridgeport Police Department. At the beginning of each month I report to their facility to pick up a sealed list, which contains the names of sworn police employees, who have been randomly selected for drug testing within that month. On August 1, 2018 I did report to Gregory and Howe and received the list for August 2018.

After breaking down the list into specific commands and shifts, I scheduled testing for the afternoon of August 21, 2108 at 3:30 pm. I was testing C-shift patrol officers whose names appeared on the random list. Lt. Hyman's name was one of those names and he was advised to report to Community Services for testing. He stated he had a doctor's appointment later that shift and wasn't sure he would be able to make it. He was informed that he could stop on his way to the doctor's as I would be there with the tester by 3:00 pm. He was at Community Services waiting by the time I arrived a couple minutes past 3:00 pm.

Community Services, located at 1395 Sylvan Avenue, Bridgeport, Ct., is a mutually agreed upon testing site by both the police union and the City. After completing the administrative paperwork, Lt. Hyman selected a specimen container and tore off the foil top. He was instructed to empty the contents of this container into the gloved hand of the sample collector. Lt. Hyman then made his way into the restroom and provided a urine sample at 15:18 hours. As with all employees, I observed as Lt. Hyman handed his sample to the collector and in the presence of Lt. Hyman, the sample was transferred into two smaller containers and sealed. Lt. Hyman then initialed each container to certify that the samples were his own and he was provided a copy of the testing custody and control form for MedTox.



On August 27, 2018, I received an email from Adrianne Cina, the contact person for the drug testing provider at Gregory and Howe, with "updated results for Brett Hyman." As it turns out, this was a second email from Ms. Cina regarding test results from samples taken on August 21, 2018. The first email contained Lt. Hyman's first test results from Dr. Suski, who is the medical review officer for Gregory and Howe, which showed a "positive" result for Marijuana (THC) Metabolite. In the second email, "updated results for Hyman" classified the results as negative since the employee had provided, according to Ms. Cina, a prescription from a doctor. These results were provided by MedTox Laboratories, Inc. of 402 West County Road, St. Paul, Minn. 651-636-7466.

Once I received the positive results for Lt. Hyman, I called Ms. Cina to have a second test done immediately. She informed me as part of the company's standard operating procedures, they automatically conduct a second test to either confirm or dispel the first test. In this case they were able to confirm the first positive result with a second positive result. So the document with the "positive" test result is in fact a confirmation of a second test.

Attached to this report you will find a copy of the memo issued by your office on November 23, 2016 regarding the prohibiting of the possession of medical marijuana cards as well as a copy of the drug results released by Gregory and Howe.

Lt. Brett Hyman was hired as a police officer on July 8, 1996. He was promoted to lieutenant on November 5, 2009 and is currently assigned to patrol on the C-shift.

Respectfully submitted...

Lt. Richard J. Azzarito



*City of Bridgeport*

DEPARTMENT OF POLICE

# OFFICE OF THE CHIEF

300 Congress Street • Bridgeport, Connecticut 06604 • Telephone (203) 581-5111 • Fax (203) 576-8130

**ARMANDO J. PEREZ**
Chief of Police

November 16, 2018

Mr. Brett Hyman
41 Coppermine Rd
Oxford, Ct 06478

Re: Notice of Loudermill

Dear Mr. Hyman:

This is to serve you notice of charges of misconduct against you based on findings an investigation established that in August, 2018 you tested positive for Marijuana (THC) Metabolite as a result of a random drug screening in violation of 2.7.4 of the Bridgeport Police Department's policies, procedure, rules and regulations.   A copy of the investigation is attached and was made available to your union representative on or about November 6, 2018.

A Loudermill (pre-disciplinary hearing) has been scheduled for November 26 at 10:00 AM at the Office of the Chief of Police, Bridgeport Police Department, 300 Congress Street, Bridgeport, CT 06604.  The purpose of this meeting is to give you an opportunity to respond to the aforementioned violation of the Bridgeport Police policies, procedures, rules and regulations. Please be advised that serious disciplinary action up to and including a thirty (30) day suspension without pay is being contemplated for the violations of the Bridgeport Police policy, procedures, rules and regulations.

You have the right to union representation at this Loudermill. A waiver shall be required if you choose to appear without union representation. Should you decline this opportunity to provide new or mitigating information or fail to attend the Loudermill, the City will take appropriate action based on the evidence available to it.

Sincerely,

Chief Armando J. Perez

cc:  Janene Hawkins, Director of the Office of Labor Relations
     Charles Paris, Union President



34



# HEALTH CARE ADVOCATES
## INTERNATIONAL

## GARY BLICK, MD

August 31, 2018

To the City of Bridgeport Attorney's Office:

It was just brought to my attention that my patient, Lt. Brett Hyman, was recently suspended from work for testing positive for Marijuana.

I have been providing medical care to Lt. Hyman since 2003 for various medical conditions, including Lyme disease, as I am Lt Hyman's Primary Care Practitioner. I have been prescribing an FDA-approved medication for his appetite since 2004, known as dronabinol, aka Marinol, which is a synthetic THC indicated to treat loss of appetite. **DRONABINOL IS NOT MARIJUANA**, a schedule 1 FDA-designated drug, but rather is a schedule III drug that has been FDA-approved for 33 years.

On two separate occasions in the past, I was contacted by the company that performs these toxicology drug screens to confirm that I had indeed been prescribing dronabinol for Lt. Hyman for a specific FDA-approved medical condition.

It has been my understanding that since at least 2013, there has been documentation filed with the physician who performs the toxicology drug screens for the Department, and he has been fully aware that Lt. Hyman will always test positive for the drug dronabinol.

I am seriously concerned that a major violation of HIPAA has occurred, and that my patient's Personal Health Information has been breached. It is also my understanding that Lt. Hyman should have been contacted if he indeed test positive for a drug screen, and this did not occur which would have cleared up any misunderstanding.

As a result of this serious violation, Lt. Hyman has suffered significant anxiety and insomnia about the possibility that this will negatively impact his career as a Shift Commander who leads others. His personal life has been significantly disrupted due to the unnecessary associated embarrassment and humiliation, possibly beyond repair, especially if this situation is not immediately remedied.

Respectfully submitted,

Gary Blick MD

**HEALTHCARE ADVOCATES INTERNATIONAL, LLC**
**A 501(c)(3) Tax-Exempt Humanitarian Initiative**
**3115 Main Street, Suite 2, Stratford, CT 06614**
**Tel/Fax: (203)345-0404/(203)908-4110**
**FEIN: 81-4538081**



PLAINTIFF'S EXHIBIT 4

*SECOND "UPDATED" RESULT*

Ronald T. Suski, M.D.
c/o Gregory & Howe
Inc. Two Corporate
Drive   Suite 645
Shelton, CT  06484

Phone:  (203) 925-8859
FAX:    (203) 944-0127

Title:    CHIEF
Name:    ARMANDO PEREZ
Company: CITY OF BRIDGEPORT POLICE DEP

   300 CONGRESS STREET
   BRIDGEPORT       CT      06604

Specimens collected from the following employee(s) have been tested by       MEDTOX Laboratory
the results and collections procedures reviewed in a manner consistent with regulations of the United States
Department of Transportation as outlined in 49 CFR 40, and are reported as follows:

Loc.  ONSITE

| Name | C&C Form # | SSN | Reason | Coll Date | Result |
|------|-----------|-----|--------|-----------|--------|
| BRETT HYMAN | Z36689431 | 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 | Random | 08/21/18 | Neg. |

_____
Ronald T. Suski, M.D.
Medical Review Officer
Adrianne Cina - MRO Assistant
Marsha George - MRO Assistant


PLAINTIFF'S
EXHIBIT
5